IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SHAYLA A. LACOSTA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:10-CV-1171-RWS |
| MCCALLA RAYMER, LLC, : | |
| PROMMIS HOME SOLUTIONS, : | |
| LLC, and BAC HOME LOAN : | |
| SERVICING, LP, : | |
| : | |
| Defendants. : | |
| : | |

## ORDER

This case comes before the Court on Plaintiff's Motion for Temporary Restraining Order [2] and Defendants' Motion to Dismiss [12]. After considering the record, the Court enters the following Order.

## Background

This actions arises out of Plaintiff's failure to make payments as specified under a loan she obtained from Home America Mortgage, Inc. ("Home America") on September 23, 2008. Plaintiff executed a promissory note (the "Note") in favor of Home America in the amount of $189,500. Repayment of the loan was secured by Plaintiff's property (the "Property") located at 2629

Pierce Brennen Court, Lawrenceville, GA 30043.  The Security Deed (the "Deed") granted by Plaintiff to MERS states that for the purpose of securing repayment of the debt set forth in the Note, "[Plaintiff] does hereby grant and convey to MERS (solely as nominee for [Home America] and [Home America's] successors and assigns) and the successors and assigns of MERS, with power of sale," the Property.  (Dkt. [11-1] at 2).  Further, the Deed states that "if necessary to comply with law or custom, MERS . . . has the right to exercise any or all of [the interests granted to MERS by the Borrower], including but not limited to, the right to foreclose and sell the Property . . . ."  (Id. at 3).  On April 5, 2010, MERS assigned to BAC Home Loans ("BAC") "all its right, title and interest in and to a certain Security Deed . . . executed by Shayla LaCosta . . . to [MERS]."  (Dkt. [16-1]).

At some unspecified time and through some unspecified means, Plaintiff allegedly contacted BAC to arrange a modification of her mortgage.  (Dkt. [1] at ¶ 24).  Plaintiff asserts that "[t]he parties agreed based on a representation by Defendant that Plaintiff would pay $837 a month until the modification came through."  (Id. at ¶ 25).  Plaintiff contends that Defendant represented to Plaintiff that she would either secure a modification, or if she made the payment of $837 each month she would not be in default.  (Id. at ¶ 26).  Plaintiff

2

maintains that she made the reduced $837 payment for three months, but her loan was nevertheless declared to be in default. (Id. at ¶¶ 27-28). As a result of Plaintiff's default under the Note, the Property was scheduled to be sold at foreclosure on May 4, 2010. The foreclosure process was initiated by BAC, the loan servicer. BAC retained as counsel Defendant McCalla Raymer to carry out the foreclosure sale and McCalla Raymer in turn utilized Defendant Prommis to send out the pre-sale notice.

Plaintiff objects to the foreclosure sale on several grounds. First, Plaintiff alleges that there has been no assignment to BAC of the note originally issued to Home America. Second, Plaintiff argues that the note and mortgage are "split" because the same entity does not possess both, and therefore the mortgage is a nullity. Finally, Plaintiff argues that BAC is not a "secured creditor," and therefore notice sent to her by BAC does not comply with Georgia law. Plaintiff's Complaint does not limit each count to only one claim or cause of action. It appears that the Complaint alleges: (1) the tort of wrongful foreclosure against all Defendants; (2) violations of the Fair Debt Collection Practices Act ("FDCPA") against Defendants Prommis and McCalla Raymer; (3) that Defendant BAC is vicariously liable for the violations of the FDCPA; and (4) common law fraud against BAC. The Complaint seeks

3

monetary damages as well as injunctive relief to prevent a foreclosure sale of the Property.

## Discussion

### I. Plaintiff's Motion for Temporary Restraining Order [2]

It is settled law in this Circuit that a temporary restraining order is an "extraordinary and drastic remedy[.]" Zardui-Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985). To obtain such relief, a movant must demonstrate:

> (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir. 2002). For the reasons stated in Section II(B) of this Order, the Court concludes that Plaintiff has failed to make such a showing here – particularly in regards to a substantial likelihood of success on the merits of her wrongful foreclosure claim – and accordingly a temporary restraining order will not be issued. Additionally, Federal Rule of Civil Procedure 65(c) states: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay

the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Plaintiff does not deny that she has failed to make payments in accordance with the Note she signed and has made no offer to tender any security. Plaintiff's Motion for Temporary Restraining Order [2] is **DENIED**.

### II.     Defendants' Motion to Dismiss [12]

####   A.     Standard for Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

5

At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

B.   Wrongful Foreclosure Claim

Plaintiff alleges that the proposed foreclosure sale of the Property is unlawful because: (1) the foreclosure notice does not comply with O.C.G.A. § 44-14-162.2; (2) BAC Home Loans or its counsel have not been assigned the promissory note; and (3) the note and the security deed have been "split." (Dkt. [2] at 2). Relevant to all three arguments, is that under Georgia law, "[i]t is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies." Gordon v. S. Cent. Farm Credit, ACA, 213 Ga. App. 816, 446 S.E.2d 514, 515 (Ga. Ct. App. 1994). Plaintiff granted and conveyed to MERS the

6

AO 72A
(Rev.8/82)

Property with power of sale. (Dkt. [11-1] at 2). The Deed Plaintiff granted to MERS states that "if necessary to comply with law or custom, MERS . . . has the right to exercise any or all of [the interests granted to MERS by the Borrower], including but not limited to, the right to foreclose and sell the Property . . . ." (Id. at 3). Plaintiff unequivocally granted MERS the power to sell the Property if she were not able to comply with the terms of the Note.

i. Notice of Foreclosure Sale

O.C.G.A. § 44-14-162.2 ("Section 162.2") states that "[n]otice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor . . . ."[1] Plaintiff asserts that the secured creditor, or owner of the loan, is the

---

[1] O.C.G.A. § 44-14-162.2(a) in its entirety states:
Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor. The notice required by this Code section shall be deemed given on the official postmark day or day on which it is received for delivery by a commercial delivery firm. Nothing in this subsection shall be construed to require a secured creditor to negotiate, amend, or modify the terms of a mortgage instrument.

7

Government National Mortgage Association ("Ginnie Mae") and therefore notice of the foreclosure sale provided by BAC fails to comply with the statutory requirements. (Dkt. [1] at ¶ 6). Plaintiff argues for a very narrow interpretation of Section 162.2. According to Plaintiff's reasoning, the Section's requirement that notice be given "by the secured creditor" is not satisfied by the secured creditor directing its loan servicer or other authorized agent to provide pre-sale notice on its behalf. Such an interpretation of the statute is not tenable.

While not construing the Georgia statute at issue presently, the Eleventh Circuit's decision in Greer v. O'Dell is instructive. 305 F.3d 1297, 1302 (11th Cir. 2002). The question posed to the Eleventh Circuit in that case was "whether a loan servicer is a 'real party in interest' with standing to conduct, through licensed counsel, the legal affairs of the investor relating to the debt that it services," particularly "whether a loan servicer may appear in Bankruptcy Court to protect a claim relating to the debt that it services." Id. at 1302, 1299. The Court concluded that a loan servicer does have such power. Id. at 1302. While Greer did not involve a mortgage loan, the Eleventh Circuit noted that "[o]ther courts have held in similar contexts that mortgage servicers are real parties in interest." Id. at 1303 (citations omitted). There is nothing in Section

8

162.2 to indicate that a secured creditor may not utilize an agent to serve notice on a debtor of the initiation of foreclosure proceedings.

Plaintiff argues that the plain language of the statute requires that the secured debtor alone provide the notice. Such a holding would defeat the underlying premise of agency law: that a principal has the power to appoint someone to act on his behalf. See Stallings v. Sylvania Ford-Mercury, Inc., 242 Ga. App. 731, 533 S.E.2d 731, 733 (Ga. Ct. App. 2000) ("The distinguishing characteristic of an agent is that he is vested with authority, real or ostensible, to create obligations on behalf of his principal . . . ." (citation omitted)). Plaintiff has not drawn the Court's attention to any instance in which the Georgia General Assembly intended that when a statute refers to a principal, that individual or entity alone must act, and may not be represented by a duly authorized agent. The Court will not assume that such an intent is manifested in Section 162.2. The purpose of Section 162.2 appears to be to regulate the form of the notice provided to a debtor prior to a foreclosure sale, requiring: that it be written; that it be provided to the debtor 30 days before the date of the proposed foreclosure; that it contain the name, address, and telephone number of the entity able to alter the terms of the mortgage; and that it be sent by registered,

certified, or overnight mail.[2]  The goal of Section 162 is to give the debtor notice of the foreclosure sale.  Whether that notice is provided by the secured creditor directly, or by its agent, is of no consequence.

        ii.      Lack of Assignment of Note to BAC

Plaintiff claims that "[t]here is no record of any assignment by Home America or MERS to BAC, such that it may institute foreclosure proceedings against the Property."  (Dkt. [1] at ¶ 12).  Plaintiff does not direct the Court's attention to any Georgia statute or decision that requires that the Note be legally transferred to the entity carrying out the foreclosure sale, if that entity is in possession of the security deed to the property.  Plaintiff does cite Professor

---

[2] The reliance of both Plaintiff and Defendants on cases interpreting O.C.G.A. § 44-14-161 ("Section 161"), as instructive on the interpretation of Section 162.2, is misplaced.  Section 161 sets forth the requirements for seeking approval of a foreclosure sale.  Section 161 is in derogation of the common law, which required no such judicial confirmation prior to seeking a deficiency judgment.  The parties have not identified any cases that assert that Section 162 is in derogation of the common law, or identify why reasoning applied to interpreting Section 161 is applicable to the question of whether a secured creditor may utilize an agent to send notice of a foreclosure sale.  Cases cited by the parties include Vlass v. Security Pac. Nat. Bank, 263 Ga. 296, 430 S.E.2d 732 (Ga. 1993) (holding that a confirmation proceeding is not a civil action such that the civil practice act applies) and Ameribank, N.A. v. Quattlebaum, 269 Ga. 857, 505 S.E.2d 476 (Ga. 1998) (holding notice of confirmation hearing must be given to debtor by the Court as directed by statute, not the creditor, based on the concern that notice by creditor may dissuade the debtor from availing himself of the protection of Section 161).  The fairness concern expressed by the Court in Quattlebaum, is not present in determining whether an agent may provide the notice required by Section 162.2.

Alexander's Treatise, Georgia Real Estate Finance and Foreclosure Law ("Treatise"), which states: "The holder of a security deed *may* not be able to pursue foreclosure upon the debtor's default if that party cannot establish that it is also the holder of the note."  (Dkt. [2] at 3 (quoting Treatise at § 3.7(b) (emphasis added))).

Professor Alexander cites the case of Sammons v. Nabers, 184 Ga. 269, 191 S.E. 124 (Ga. 1937), for this proposition.  In Sammons, the note and security deed were originally given by the debtor to Robert Young, whose heirs purported to transfer it to the plaintiff in that action.  The court's decision in that case does not appear to rest on the fact that one entity possessed the note and another the security deed, but rather, that there was no evidence to "indicate under what right or claim the persons who executed this transfer undertook thereby to convey and quitclaim the property conveyed by the security deed." Sammons, 191 S.E. at 126.  The court's concern was that the plaintiff had not demonstrated that it was in proper possession of the security deed.  This Court does not read Sammons to require that an entity or individual in possession of the security deed, must also possess the note before bringing a foreclosure

11

action.[3]

         iii.    "Split" of the Note and Deed

Plaintiff argues that the note and mortgage have been "split" and therefore any assignment of the Deed from MERS to BAC is a nullity. Plaintiff argues that in order for an entity to proceed with a foreclosure sale, it must possess both the promissory note and the security deed. Since MERS only possessed the Deed, the Deed is all it could transfer to BAC and because BAC did not also possess the Note, it could not foreclose on the Property. Magistrate Judge Alan J. Baverman rejected this argument in a Report and Recommendation adopted by Judge Julie E. Carnes. See Nicholson v. OneWest Bank, No. 1:10-cv-0795-JEC/AJB, 2010 WL 2732325, at *4 (N.D. Ga. April 20, 2010) ("[T]he nominee of the lender has the ability to foreclose on a debtor's property even if such nominee does not have a beneficial interest in the

---

[3] Plaintiff's reliance on Harwood v. Great Am. Mgmt. and Inv., Inc., 156 Ga. App. 22, 274 S.E.2d 5 (Ga. Ct. App. 1980), for the proposition that an entity in possession of the security deed but not the note may not bring a foreclosure action, is also misplaced. (See Dkt. [2] at 4). That case stands for the proposition that initial loan documents that stated that two partners in an association were excluded from personal liability on the loan, meant that the two were not liable for the deficiency balance after a foreclosure sale of the property. Id. at 6, 7 ("Since the trial court's determination that the defendants were not intended to be held personally liable on the agreement is the only interpretation consistent with the clear import of every other relevant document . . . the grant of . . . summary judgment on the issue of their personal liability must be affirmed.")

note secured by the mortgage."). Plaintiff in Nicholson, represented by the same counsel as Plaintiff in this case, cited the same case law as does Plaintiff here in support of the position that the splitting of the security deed and the note rendered the security deed a nullity.[4] Judge Baverman stated that the cases cited by the plaintiff in Nicholson for that proposition were inapplicable to that case, noting that the cases cited by the plaintiff "all concern questions of state law in other jurisdictions besides Georgia," and therefore "the Court fail[ed] to see the relevance of these cases to the present controversy." Id. at *4 n.5. Similarly, Plaintiff here has failed to draw the Court's attention to any Georgia statute or decision interpreting Georgia law that precludes the holder of the security deed from proceeding with a foreclosure sale simply because it does not also possess the promissory note.

Plaintiff's argument is also foreclosed by the plain language of the Deed she granted to MERS, which MERS subsequently assigned to BAC. In Georgia, a security deed should be construed in favor of allowing exercise of the power of sale. Kennedy v. Gwinnett Commercial Bank, 155 Ga. App. 327,

---

[4] Compare the cases cited by Plaintiff in Section III ("The Splitting of the Note and Mortgage Rendered the Mortgage a Nullity") of her Brief in Support of Motion for TRO, Dkt. [2] at 4-8, with the cases cited by the plaintiff in Nicholson. 2010 WL 2732325, at *4 n.5.

13

270 S.E.2d 867, 870 (Ga. Ct. App. 1980).  The Court of Appeals in Georgia has stated:

> It is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies. It is likewise clear that when the grantor of a security deed grants a power of sale he does so not for his ultimate benefit but, rather, for the benefit of the grantee. "The power of sale in a mortgage simply gives to the (mortgagee) a remedy for the collection of his debt in a summary way. The presence of such a power in the mortgage simply evidences an agreement between the parties that the (mortgagee) shall be relieved from the necessity of resorting to a foreclosure at law or in equity. That portion of the mortgage containing the power, like all other contracts, is to be construed so as to effectuate the intention of the parties, and the power must be exercised in accordance with the intention of the parties as indicated in the clause in the mortgage conferring the power. The power is conferred for the purpose of enabling the mortgagee to collect his debt."

Id. (citation omitted).  The plain language of the Deed granted by Plaintiff to MERS recognizes that the Note is held by the "Lender," but nonetheless expressly grants MERS and its assigns "the right to foreclose and sell the Property."  (Dkt. [11-1] at 3).  The deed discloses no intent on the part of Plaintiff to restrict MERS or its assigns from selling the property if the Note and Deed were not in the possession of the same entity.

Plaintiff's Complaint fails to assert a claim for wrongful foreclosure that is plausible on its face.  Therefore, Plaintiffs' wrongful foreclosure claim is

14

**DISMISSED**.

### C. FDCPA Claim

Plaintiff claims that "[t]he actions of Defendants Prommis and McCalla are in violation of the FDCPA in that each Defendant failed to properly send notice of the foreclosure, failed to advertise properly and foreclosed when neither the attorneys representing them nor BAC had the right to do so." (Dkt. [1] at ¶ 14).  As discussed above in Section II(B)(i) the notice of foreclosure sale was proper and as discussed in Section II(B)(iii), BAC had the right to foreclose upon the Property.  Therefore, the accusations underlying Plaintiff's FDCPA claims fail.  Additionally, the legislative history of 15 U.S.C. § 1692a(6), defining the term "debt collector," "indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985).  The Eleventh Circuit has held that the FDCPA "specifically says that a person in the business of enforcing security interests is a "debt collector" for the purposes of § 1692f(6), which reasonably suggests that such a person is not a debt collector for purposes of the other sections of the [FDCPA]." Warren v.

Countrywide Home Loans, Inc., 342 Fed. Appx. 458, 460 (11th Cir. 2009). Finally, Plaintiff has not asserted a violation of Section 1692f(6) that is plausible on the face of the Complaint, because BAC had the right to foreclose on the Property. Therefore, Plaintiff's FDCPA claims are **DISMISSED**.

### D.    Fraud Claim

Plaintiff's fraud claim is based upon representations supposedly made by Defendant BAC concerning a modification of her mortgage. However, Plaintiff's Complaint does not provide the requisite level of detail needed to adequately allege fraud. Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral or fraudulent behavior." Brooks v. Blue Cross and Blue Shield, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (citations omitted). Rule 9(b) may be satisfied if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
> (2) the time and place of each statement and the person responsible for making . . . same, and

16

>> (3) the content of such statement and the manner in which they misled the plaintiff, and
>> (4) what the defendants "obtained as a consequence of the fraud."

Id. at 1371 (citation omitted).

Plaintiff does not allege precisely what statements were made, whether such statements were made in writing or orally, the time and place of the relevant statements, or the person(s) responsible for making such statements. The Court will not dismiss Plaintiff's fraud claim, but rather provide Plaintiff an opportunity to amend her Complaint to attempt to allege her fraud claim with the level of specificity required by Rule 9(b).

## Conclusion

For the aforementioned reasons, Plaintiff's Motion for Temporary Restraining Order [2] is **DENIED**. Defendants' Motion to Dismiss [12] is **GRANTED** as to Plaintiff's wrongful foreclosure and FDCPA claims and **DENIED**, **without prejudice**, as to Plaintiff's fraud claim. Plaintiff may attempt to amend her Complaint within 14 days of the entry of this Order to reassert her fraud claim with the required level of specificity. Failure to amend the fraud claim within this 14-day period will result in a dismissal of the claim.

17

**SO ORDERED**, this   18th   day of January, 2011.

_____
**RICHARD W. STORY**
United States District Judge